IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ADDISON CARTER and TYRONE BEAVER, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: _3:20-cv-00152_ |
| | ) | |
| DOMINION ENERGY, INC. and its wholly | ) | Class and Individual Claims |
| owned subsidiary VIRGINIA ELECTRIC AND | ) | |
| POWER COMPANY; FRENZELIT, INC.; ARC | ) | |
| ENERGY SERVICES, INC.; CHRISTOPHER | ) | |
| DYKES; JOEY BROWN; WILLIAM | ) | |
| WENTWORTH; TOM O'BRIEN and | ) | |
| ROGER D. PHILLIPS, II | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiffs Addison Carter and Tyrone Beaver, by counsel, and state the following as their Complaint against Defendants Dominion Energy, Inc. and its wholly owned subsidiary Virginia Electric and Power Company (VEPCO); Frenzelit, Inc., Arc Energy Services, Inc., Christopher Dykes, Joey Brown, William Wentworth and Tom O'Brien and Roger D. Phillips:

### NATURE OF THE ACTION

1.      This is an employment discrimination action, brought pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"); the Civil Rights Act of 1871 ("Section 1985"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"); and related Virginia state common law and statutory protections.

2.      Plaintiffs Addison Carter ("Carter") and Tyrone Beaver ("Beaver") (collectively "Plaintiffs") allege that Defendants Dominion Energy, Inc. and its wholly owned subsidiary VEPCO (collectively "Dominion") have engaged in a company-wide pattern and practice of employment discrimination, both intentional and systemic, on the basis of race, against themselves and similarly situated African American employees (including all supplied "contract" labor over which Dominion/VEPCO retained the right to control), former employees and applicants for employment as alleged in this Complaint. Dominion's discriminatory practices include, but are not limited to, discrimination in recruitment, hiring and retention, on a classwide basis as alleged in this Complaint. Plaintiffs seek declaratory, injunctive and equitable monetary relief from these practices; compensatory and punitive damages, equitable remedies of accounting, restitution and disgorgement; and an award of costs, expenses, and attorneys' fees, all for themselves individually and on behalf of the class or classes they seek to represent.

3.      Plaintiffs, individually, allege that Dominion was assisted in this discrimination by the suppliers of labor for its "augmented" workforce, Frenzelit, Inc. and Arc Energy Services, Inc., and that these Defendants, as joint employers, engaged in intentional and unlawful discrimination against Plaintiffs in violation of Title VII and Section 1981, including retaliation against Plaintiffs after they opposed such racially based conduct and attempted to lodge complaints of racial discrimination.

4.      Plaintiffs, individually, bring individual actions against Defendants Christopher Dykes ("Dykes"), Joey Brown ("Brown"), William Wentworth ("Wentworth"), Tom O'Brien ("O'Brien") and Rodney D. Phillips, II under the Civil Rights Acts of 1866 ("Section 1981) and for their interference with Plaintiffs' right to freely contract without regard to race and these Defendants' concerted actions violative of the Civil Rights Act of 1871 ("Section 1985") to deny

2

Plaintiffs' rights and to further conceal the racially based racial slurs and racially-based treatment of Plaintiffs, including assaults on Plaintiff Carter.

5.      Plaintiffs also bring individual claims against all Defendants for defamation and against Defendants Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc. for racially charged invective violative of Va. Code § 8.01-45.

6.      Finally, Plaintiff Carter brings individual claims against Defendants Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc. for common law battery and common law assault.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. §§ 1981 and 1985(3) as amended, Title VII to the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as amended, and this court's pendent jurisdiction over state law claims, 42 U.S.C. § 1367.  Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.  Venue is conferred upon this Court pursuant to 28 U.S.C. § 1391(b).

8.      The class claims presented herein arose within this judicial district.  Dominion and VEPCO, with whom Frenzelit and Arc contracted to supply the labor at issue, operates and maintains offices within this judicial district.

9.      Plaintiffs have exhausted their administrative claims by a filing charges of discrimination with the Office of Federal Contract Compliance Programs (OFCCP), which issued right to sue letters on the previously filed Title VII claims of discrimination against Dominion Energy, Inc., Frenzelit, Inc. and Arc Energy Services, Inc.  Plaintiffs have timely filed this action on these claims.  No administrative filings are required as a prerequisite to suit under 42 U.S.C. §§ 1981, 1985 or the Virginia statutory or common law claims asserted.

## PARTIES

10.     The named Plaintiffs are former employees of Dominion as supplied labor under contracts with Frenzelit, Inc. and Arc Energy Services, Inc.

11.     At the time of the facts alleged herein, Addison Carter was a 23-year-old African American male and resident of Manchester, Connecticut.  Prior to the actions complained of herein, his March 26, 2019 banning from all Dominion sites and resulting termination by Arc Energy Services, Inc., he had successfully worked as a specialty welder for Dominion Energy, Inc./VEPCO, in joint employment with Frenzelit, Inc. and Arc Energy Services, Inc.  On or about June 3, 2019, plaintiff Carter filed a Charge of Title VII Discrimination with the Office of Federal Contract Compliance Programs ("OFCCP"), under the Memorandum of Understanding with the Equal Employment Opportunity Commission ("EEOC") for dual filing of such EEOC charges against federal contractors.  On or about December 6, 2019, OFCCP issued a right to sue on that Title VII charge as to Dominion Energy, Inc., Frenzelit, Inc. and Arc Energy Services, Inc.

12.     At the time of the facts alleged herein, Tyrone Beaver was a 40-year-old African American male and resident of Winnsboro, South Carolina.  Prior to the actions complained of herein (including his March 26, 2019 banning from all Dominion sites and resulting termination by Dominion Energy, Inc./VEPCO, Frenzelit, Inc. and Arc Energy Services, Inc.), he had successfully worked as a specialty welder for 22 years.  Plaintiff Beaver was directly employed by Arc Energy Services, Inc. from May 1, 2014 until March 26, 2019.  At the time of his termination, he was working as supplied specialty labor for Dominion Energy, Inc./VEPCO.  On or about June 3, 2019, plaintiff Beaver filed a Charge of Title VII Discrimination with the Office of Federal Contract Compliance Programs ("OFCCP"), under the Memorandum of

4

Understanding with the Equal Employment Opportunity Commission ("EEOC") for dual filing of such EEOC charges against federal contractors.   On or about December 6, 2019, OFCCP issued a right to sue on that Title VII charge as to Dominion Energy, Inc., Frenzelit, Inc. and Arc Energy Services, Inc.

13.      Dominion Energy, Inc., formerly Dominion Resources, Inc., is a publicly traded company that produces and transports energy in state regulated electric and natural gas transmission and distribution operations in 18 states, and serving residential, industrial and government customers in Virginia, North Carolina and South Carolina.   In 2019 Dominion Energy, Inc. reported employing 21,000 employees divided among three primary areas: gas infrastructure, power generation, and power delivery (27%).[1]   In January, 2019, Dominion Energy, Inc. acquired South Carolina Electric & Gas Company (SCANA), adding generation, transmission, distribution and sale to South Carolina customers (now operating as a 4th unit, Dominion's Southeast Energy Group.)   Virginia Electric and Power Company (VEPCO), also doing business in Virginia as "Virginia Power" or "Dominion Energy Virginia" is a wholly owned subsidiary of Defendant Dominion Energy, Inc., and operates the Bear Garden Power Plant as part of its natural gas-based power generation operations.   Dominion Energy, Inc./VEPCO is a "person" subject to suit under the Civil Rights Statutes, including 42 U.S.C. §1981(b) and 42 U.S.C. § 1985(3), as amended, and Title VII to the 1964 Civil Rights Act, and does business in this judicial district.   Dominion Energy, Inc./VEPCO is headquartered in Richmond, Virginia and may be served with service of process at its registered agent for service

---

[1] In 2018, Dominion estimated percentages of its employee workforce as 30% in gas infrastructure, 28% in power generation and 27% in power delivery (percentages reported as part of Dominion's 8/31/19 Workforce Metrics found at https://sustainability.dominionenergy.com/metrics/social-and-workforce-metrics/.)

of process: CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060-6802.

14.    Defendant Frenzelit, Inc. is the U.S. subsidiary of Frenzeit GmbH, its German parent.  Frenzelit, Inc. describes itself as a "globally active company with subsidiaries and sales offices in the Czech Republic, China, India, Dubai and the United States" involved in fabricated metal product manufacturing, particularly with materials that seal and insulate. Frenzelit, Inc. (formerly Frenzelit, North America, Inc.) is a North Carolina corporation with a Virginia office at 18050 Tranquility Rd., Purcellville, VA 20132.  Dominion Energy, Inc./VEPCO contracted with Frenzelit, Inc. for the provision of labor, including that of Plaintiffs.  Frenzelit, Inc. is a "person" subject to suit under the Civil Rights Statutes, including 42 U.S.C. §1981(b) and 42 U.S.C. § 1985(3), as amended, and Title VII to the 1964 Civil Rights Act, and does business in this judicial district.  Frenzelit, Inc. may be served with service of process at its registered agent for service of process: Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219-4100.

15.    Defendant Arc Energy Services, Inc. is a welding and machining services provider in the power generation industry (nuclear, fossil and combined cycle) based in Rock Hill, South Carolina.  It employs approximately 100 employees and provides staffing of some 1500 workers to the power generation industry.  Dominion Energy, Inc. contracted with Arc Energy Services, Inc. for the provision of "augmented" staff of skilled craftsmen to Dominion/VEPCO, including specialty welders such as Plaintiffs.  Arc Energy Services, Inc. is a "person" subject to suit under the Civil Rights Statutes, including 42 U.S.C. §1981(b) and 42 U.S.C. § 1985(3), as amended, and Title VII to the 1964 Civil Rights Act, and does business in this judicial district.  Arc Energy Services, Inc. may be served with service of process at its

registered agent for service of process: Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219-4100.

16.     Defendant Christopher Dykes is a welder supplied to Dominion by Frenzelit, Inc. Mr. Dykes may be served at 314 Oxley Drive, Lyons, Toombs County, Georgia or at the Bear Garden Power Generation Station, 2608 C.G. Woodson Road, New Canton, Virginia 23123.

17.     Defendant Joey Brown is a welding and labor supervisor supplied to Dominion under a contract with Frenzelit, Inc.   Mr. Brown may be served at 207 Shimmer Drive, Lexington, North Carolina 27292 or at his place of business 4165 Old Salisbury Road, Lexington, North Carolina 27295.

18.     Defendant William Wentworth was the on-site Dominion Resources, Inc. manager at the Bear Garden Power Plant at all times relevant hereto.   Mr. Wentworth may be served at the Bear Garden Power Generation Station, 2608 C.G. Woodson Road, New Canton, Virginia 23123.

19.     Defendant Tom O'Brien was the Field Services Manager for Frenzelit, Inc. and may be served at his primary place of business at 4165 Old Salisbury Rd., Lexington, North Carolina, 27295.

20.     Defendant Roger D. Phillips, II is the President of Arc Energy Services, Inc.   He may be served at Arc Energy Services, Inc., 1876 Midland Road, Rock Hill, South Carolina 29730.

## FACTUAL ALLEGATIONS

### Background

21.     Plaintiff Beaver is an accomplished specialty welder.  He has been performing such work for over twenty years, primarily for power companies on the Eastern seaboard, and since 2014 for Dominion.

22.     At the time of the facts asserted herein, Plaintiff Carter had been a specialty welder for two years and had trained under Plaintiff Beaver.

23.     Dominion Energy, Inc., including its wholly owned subsidiary VEPCO, is a federal contractor.  In 2018, it reported some $59.8 million in federal government contracts, primarily with the Department of Energy.  It performs this work under subcontracts with other labor suppliers, including Defendants Frenzelit, Inc. and Arc Energy Services, Inc., each of which, on information and belief, have exceeded $10,000 in aggregate federal contract value.

24.     As such, Defendants Dominion Energy, Inc/VEPCO., Frenzelit, Inc. and Arc Energy Services, Inc. are subject to Executive Order No. 11246 forbidding discrimination in hiring or retention on the basis of race.  *See, e.g.* 41 C.F.R. §60-1.4(a) (2017) ("The contractor will not discriminate against any employee or applicant for employment because of race, color..."  The contractor will take affirmative action to ensure that applicated are employed, and that employees are treated during employment without regard to their race, color...") [*see also* 41 C.F.R. §60-1.4(a)(2), (b)(1), and (2) (same)]

25.     Plaintiffs are qualified to perform specialty welding and demonstrated expertise resulting in their having primarily worked in welding operations at power generation stations. Due to the sensitivity of power grid operations, Plaintiffs may be required to obtain security

clearances to work on such projects.  Unblemished reputations are important to work in these specialty applications.

26.     Dominion transports natural gas, operates a "fleet" of power plants, and runs coal, gas, solar and wind powered generators.

> Dominion Energy's operations are conducted through various subsidiaries, including Virginia Power and Dominion Energy Gas." Annual Report at 8 (Form 10-K) (Feb. 28, 2017).

27.     Dominion operates sixteen gas power generation stations in the "Power Generation" operating unit: Bellemeade, Bremo, Brunswick County, Chesterfield, Darbytown, Elizabeth River, Gordonsville, Gravel Neck, Greensville County, Ladysmith, Pittsylvania Electric Generation Project, Possum Point, Remington, Rosemary and Warren County.

28.     Dominion's Power Generation unit operates the following nuclear power stations: Millstone Power Station, North Anna Power Station and Surry Power Station.

29.     Dominion's Power Generation unit operates the following hydro power stations: Bath County, Gaston and Roanoke Rapids.

30.     Dominion's Power Generation unit operates the following Biomass power stations: Pittsylvania, Altavista, Polyester and Southampton.

31.     Dominion's Power Generation unit operates the following solar power plants: Whitehouse Solar and Woodland Solar.

32.     And, Dominion's Power Generation unit operates the following coal and oil fueled power stations: Chesterfield, Clover, Mount Storm, Yorktown, Mecklenburg and Virginia

City Hybrid Energy Center (coal); Low Moor, Northern Neck, Possum Point and Yorktown (oil).[2]

33.     Plaintiffs have worked in several of these stations, as well as in other power plants throughout the eastern seaboard.  Over 22 years, Plaintiff Beaver has worked at power stations in West Virginia, Massachusetts, Pennsylvania, New Jersey, California, Iowa, Florida, Maryland, Georgia, Florida, and many Virginia power plants, including the Dominion Surry and North Anna nuclear power plants.

34.     Work at these facilities requires specialized, skilled as well as non-skilled labor.  Dominion/VEPCO's essential work on its power plants requires the employment of many trades, including welders, fitters, electricians, millwrights, requiring certifications.  Each of the above power plants is staffed with Dominion/VEPCO onsite management, but most labor is performed by supplied "contract" labor.

35.     From mid-2014 through his March, 2019 termination from Bear Garden Power Station, Plaintiff Beaver worked exclusively at Dominion power stations, including Bear Garden, Bellemeade, Brunswick, Chesterfield, Gordonsville, Ladysmith, Pittsylvania, Possum Point, Warren, Clover, Mt. Storm, Virginia City and Yorktown power stations.  Plaintiff Carter also worked at Dominion power stations (Possum Point, Yorktown, Virginia City) for extended periods of time before Bear Garden.

36.     During this 2014-2019 timeframe, Plaintiff Beaver observed that few African Americans worked on any Dominion power station sites.  He recalls perhaps only 1-2 African Americans at sites with as many as 50-100 or more employees.  And, the few African American employees observed were usually "runners", laborers or assistants and not skilled trades workers.

---

[2] These stations exclude non-jurisdictional and merchant power generation stations also listed in Dominion's last filed Form 10-K (February 28, 2020).

37.     Dominion has developed and continually reinforces a centralized corporate culture that is implemented at each of its power generation facilities throughout the southeast (and in other operations throughout the country).  On information and belief, Dominion regularly moves upper level managers among power generation operations, and often from one state to another.  This practice is done in part to ensure that a uniform Dominion culture operates consistently throughout its operational divisions and facilities.

38.     Dominion's local power station management is almost exclusively white.  While plaintiffs worked at the Bear Garden Power Station, Dominion management was exclusively white.

39.     The homogenous racial composition of Dominion/VEPCO's management is reflected in the labor suppliers and labor supplied.  Dominion/VEPCO's labor supplier contractors also have exclusively white management.  Both the Frenzelit, Inc. and Arc Energy Services, Inc. management involved in this action were exclusively white.  Likewise, few African American managers were employed at the power stations when Plaintiffs were employed at such stations.

40.     During this time, Plaintiffs' work as supplied labor from Arc Energy, they encountered no minority management at either Frenzelit, Inc. or Arc Energy Services, Inc.  And, few employees of such companies were minorities.

41.     Headquartered in Richmond, Virginia, Dominion Energy, Inc. and its subsidiary VEPCO enter into contracts with labor suppliers for the purpose of "augmenting" its workforce, including workers at its various power stations.  Dominion/VEPCO manages such labor contracts, and other hiring, from its Richmond, Virginia home offices at 120 Tredegar Street, 1

James Center and/or 701 E. Cary Street, all in the City of Richmond, and/or online at hrstaffing@dominionenergy.com.

42. In another matter in which Dominion Energy, Inc.'s "joint employer" liability over its "augmented workforce" was at issue, including supplied labor, Dominion explained its use of contract workers as part of its "augmented" workforce:

> "VEPCO and the other Dominion subsidiaries determine their own staffing needs and contract with staffing agencies of their choice. (citation omitted) For example, the maintenance department at a VEPCO power station might require a supplemental electrician to perform electrical work, whereas the engineering department at the same VEPCO power station (or a different station altogether) might require a supplemental worker to perform engineering functions, and the two departments would be free to contract with different firms for these different areas of expertise. (citation omitted)"

*Hall v. Dominion Energy, Inc., et al*, Civil Action No. 3:18-cv-00321, Dominion Energy, Inc.'s Mem. in Opp. to Plaintiff's Motion for Conditional Certification, at p. 8. (involving supplied or "augmented" labor working at Warren County Power Station, Front Royal, Virginia, also owned by VEPCO as part of its gas fossil fuel power generation operations in Virginia.)

43. The district court in that matter described Dominion's control over supplied labor as follows:

> In short, Dominion paints itself as a cohesive monolith, smoothly providing services through thousands of employees.   This case poses a legitimate question whether Dominion jointly employs the people who, through subsidiaries or by contract, help it meet its corporate goals.

*Hall, et al v. Dominion Energy, Inc., et al*;; Order (denying Dominion Energy, Inc. Motion for Protective Order); (December 20, 2018) (J. Gibney)

44. Indeed, Dominion/VEPCO staff its power plants with supplied "contract" labor, which Dominion/VEPCO maintains the right to, and does, control as their own employees.

45. On information and belief, the contracts between Dominion and its labor suppliers provide that Dominion maintained the contractual right to absolute control over Dominion's "augmented" workforce working at the Bear Garden, and other Dominion power plant sites in, and outside, the Commonwealth of Virginia, including the right to remove any personnel from

any Dominion worksite, in Dominion's sole discretion, and to ban personnel from all Dominion's premises for five (5), or more, years.

46.     The degree of control which Dominion exercises and/or reserves the right to exercise establishes Dominion's status as a joint employer of Plaintiffs.

47.     Dominion's control of workers on Dominion worksites is particularly true with regard to safety and discrimination, on which all workers, including labor supplied under contracts for "augmented" workers, receive training provided by Dominion's Human Resources personnel. This purportedly extends to any form of harassment or abusive or objectionable language. Dominion policy includes both reporting and an investigation mechanism as part of Dominion's exercise over this aspect of workers on Dominion sites.

48.     Dominion stated policy declares that discrimination is not permitted on any Dominion worksite.

> "Under no circumstances should any employee, contractor or other agent or job applicant be treated less favorably because of race, color, ancestry…"   (Dominion Code of Ethics and Business Conduct p. 9 https://www.dominionenergy.com/library/domcom/media/investors/governance/governance-policies-and-guidelines/code-of-ethics-andbusiness conduct.pdf?modified= 20191121195400 (last visited March 2, 2020)

49.     Dominion policy also extends to workplace violence: "As part of our commitment to safety, we will not tolerate any form of workplace violence. Violence includes any verbal or physical conduct occurring in the workplace or affecting the workplace that causes someone to fear for their personal safety, the safety of co-workers…" *Id.*

50.     And, Dominion states, "(m)anagement is held to an even higher standard to ensure that the company is not creating an environment of distrust or unwillingness to report a concern…" *Id.*

51.     But, in practice, Dominion managers and on-site delegated management were free to make employment decisions based on their subjective preferences rather than objective criteria and individual qualifications.

52.     African Americans are under-represented in the Dominion power plant workforce(s) relative to the actual workforce and relative to available and qualified African Americans.

53.     For example, after the filing of the administrative claim, Arc Energy Services, Inc. hired many more African American specialty workers, who, on information and belief, were supplied to Dominion Energy/VEPCO worksites (as that was the sole source of Arc Energy's supply of labor at the time.) On information and belief, Arc knew of this available and qualified supply of African American workers, but had not employed or placed them with Dominion until learning of Plaintiffs' race discrimination complaints.

54.     Dominion has taken no efforts to address the underrepresentation, contrary to its obligation as a federal contractor, or pursuant to obligations under Title VII and/or 42 U.S.C. § 1981.

### Plaintiffs Observe a Disproportionately White Workforce When They Report

55.     Plaintiffs were assigned to Dominion/VEPCO's Bear Garden Power Station worksite under Defendants Frenzelit, Inc. and Arc Energy Services, Inc.'s labor supply contract(s) Dominion/VEPCO.

56.     On March 19, 2019, Plaintiffs Beaver and Carter reported to the Dominion Energy Bear Garden Power Generation Plant at New Canton, Virginia.

57.     They noticed that, of some 25-30 permanent staff, and as many as 100 or more "augmented" labor workers, they did not see any other African American workers among the

skilled laborers on site. There were no other African American workers in the workers supplied by Frenzelit, who formed the balance of the crew of "augmented" workers to which Dominion assigned them. Indeed, except for Plaintiffs, their entire work crew was Caucasian.

58.     With such disproportionate statistics, Defendants Dominion/VEPCO, Frenzelit and/or Arc Energy could not possibly have complied with their affirmative action plan (AAP) obligations under Executive Order 11246 and 41 C.F.R. §60-1.4(a) (2017). On information and belief, Defendants' designated officials with implementation responsibilities to assure OFCCP compliance failed to do so.

59.     On further information and belief, Defendants' required internal organizational and job group analyses revealed the lack of minority representation in the Power Generation workforce which includes the Bear Garden Power Plaint.

60.     Because (1) Plaintiffs lived in Connecticut and South Carolina, (2) the labor supplier Frenzelit is based in North Carolina, (3) the labor supplier Arc is based in South Carolina, and (3) Dominion has operations in Virginia, North Carolina and South Carolina (supplying natural gas to Utah, West Virginia, Ohio, Pennsylvania, North Carolina, South Carolina and Georgia) with generation facilities in Indiana, Illinois, Connecticut and Rhode Island, the applicable "recruitment area" for statistical analysis of compliance with affirmative action obligations should have been no smaller than these Defendants' geographic reach.

**Plaintiffs Are Immediately Confronted with Racial Animus at the Dominion Bear Garden Site**

61.     Upon their arrival to the Bear Garden worksite, Plaintiffs attended the safety and discrimination training, which included sections on race discrimination, the complaint and investigation process and Dominion's purported "Zero Tolerance" of any form of discrimination. After the training, Plaintiffs entered the Frenzelit on-site trailer for work assignments.

62.     In the on-boarding training, Dominion/VEPCO assumed responsibility to assure full compliance with the nation's equal employment opportunity (EEO) laws, including Title VII and Sections 1981 and 1985.

63.     Plaintiff Beaver had worked with many of these workers on other Dominion jobsites. Plaintiff Carter had worked at other Dominion power plants but had not met this crew.

64.     Almost immediately after entering the Frenzelit trailer, Defendant Dykes, a Caucasian male worker, approached Plaintiff Carter, grabbed Carter by his testicles and stated what a "pretty young black boy" he was. Carter defended himself by placing Dykes in a hold, which angered Dykes.

65.     The supervisor, Jeremy Helmstetler, then introduced Plaintiff Carter to the white crew as "Toby" – a reference to the slave in the mini-series 'Roots.' The tone had been set – Plaintiffs were to be singled out because of their race.

### Open Racially Based Animus Continues, but is Not Addressed

66.     Over the next several days, Defendant Dykes became openly hostile and rude to Plaintiffs. When approaching Plaintiffs, he began to physically push into, or brusquely shove past, Plaintiffs, saying some variation of "get the f*ck out of the way." He did not treat Caucasian workers in this manner. No supervisor on the Dominion site corrected Defendant Dykes. The Caucasian employees just smirked or laughed, including supervisors.

67.     Plaintiffs discussed the abuse and agreed to not permit Dykes to provoke them into any physical altercation, as it appeared that he was attempting to provoke.

68.     Although Plaintiff Beaver was the senior welder on the worksite, Dykes attempted to interfere with Plaintiffs' helper (a Caucasian technician) instructing him to perform his work differently than instructed by Beaver and Carter. Not only was the instruction Dykes provided

incorrect and inconsistent with the specific task instruction for that particular welding task, Dykes was not a supervisor and had no supervisory authority. Plaintiff Beaver instructed his assistant to continue to do the work as everyone had been instructed in the morning task assignment meeting. Plaintiff Beaver's work was in accordance with welding standards and no supervisor corrected the work Beaver supervised.

69.     Dykes escalated his efforts by actively discouraging other workers (all Caucasian) from assisting Plaintiffs in the performance of their duties, solely because of, and with specific reference to, their race.

70.     Dykes intentionally welded directly above Plaintiffs so as to drop sparks on them, burning Plaintiff Beaver.

71.     Although Plaintiffs' Caucasian co-workers saw and heard Mr. Dykes' actions toward Plaintiffs, they did nothing to intervene to stop his behavior.

72.     On information and belief, these Caucasian co-workers had been approached by Dykes regarding Plaintiffs and/or encouraged to participate in his campaign of overt racially based animosity toward them. On further information and belief, Dykes' efforts included threats of violence by Dykes toward Caucasian co-workers who continued to assist Plaintiffs at the work site.

73.     Supervisors and managers on the Dominion worksite who observed Dykes' conduct toward Plaintiffs never corrected or reprimanded Dykes. Dykes' physicality and vulgar comments directed toward Plaintiffs continued from March 20-25, 2019.

74.     Plaintiffs did their best to ignore Dykes, diffuse the situation and do their work. But this seemed to aggravate Dykes even more, as Plaintiffs could complete their welding tasks more promptly than Dykes. His efforts escalated.

### The Events of March 26, 2019: Dykes' Racial Invective, Assault and Racially Motivated Threats of Violence

75.     On March 26, 2019, at approximately 7:00 a.m., Jeremy Helmstetler, the crew supervisor, advised the crew that he would be out for an eye appointment and that another co-worker would drive him.  He informed the crew that Joey Brown would be supervising in his absence.

76.     Shortly after Mr. Helmstetler left, Dykes entered the trailer with his usual, "Get the f**k out of the way" comment and physically shoved Plaintiff Carter as he walked past, slamming things around the trailer and muttering about Plaintiffs.  Several Caucasian co-workers stood by, silent.  Carter asked if Dykes "had a problem" with him.

77.     Dykes responded with a racial tirade on why he did have a problem, including that Plaintiffs' "species was lazy;" other racial invective and promising that he would "call Frenzelit and make sure that you never work for them again, you f**king mook." He repeatedly called Carter a "n***er."  Dykes' rant was not brief, but took an extended amount of time, at least several minutes.  Dykes moved toward Carter from the back of the trailer to the doorway, and thrust his fist into Carter's face, threatening Carter, and insisting that Carter go to the parking lot to fight.  Dykes loudly told Carter that he wanted to take him to his truck where he could get his whip and "whip you like they used to do to the slaves."  Carter was backed up as far as he could be without exiting the trailer, with Dykes' gesturing and yelling at him.

### Acting Supervisor Brown's Instruction to Fight Dykes

78.     Rather than admonishing Dykes, Defendant Brown instructed Carter to "take it to the parking lot and fight it out."  Dykes exited to the parking lot, where he continued his racial tirade, including "n***er," "black boy": and other racially derogatory epithets, and which also

18

included homophobic insults, all of which were designed as 'fighting words' to induce Carter to strike him.

79.     But, Carter refused to be drawn in.  He sought to file a complaint regarding the racial harassment and racially motivated assaultive behavior.

**Dominion Refuses to Accept a Written Complaint**

80.     Carter exited the trailer but, instead of going to the parking lot to fight, he veered off to the Dominion office to file a discrimination complaint, with Dykes continuing to yell racial epithets to try to taunt Carter into the parking lot to fight.

81.     In the Dominion office, Carter explained what was happening to a Dominion employee and was directed to the person who has given the Dominion HR/Safety on-boarding training.  Carter verbally reported what had happened to this person and told him that he wanted to make a written statement.

82.     This person directed Carter to another man, "Bill," believed to be the William Wentworth whose name was associated with that office.  Carter verbally described what had just occurred and reported that he wanted to file an incident report involving the racial harassment, bullying and abuse.

83.     During this time, Plaintiff Beaver, who had remained in the Frenzelit trailer, observed Dykes making a phone call.

84.     While Plaintiff Carter was speaking with Mr. Wentworth about filing a complaint, Mr. Brown entered the office, said that he had "made a decision" and that Plaintiffs needed to "get (their) stuff and leave the site" – saying that Mr. Dykes would also be required to leave.

85.     Defendant Wentworth did not permit Carter to complete a written complaint.

**Dominion Rejects Plaintiffs' Second Attempt to File a Written Complaint- Plaintiffs Are Banned from Dominion Work Sites**

86.     Defendant Brown continued, apologizing to Defendant Wentworth about the situation.  He said that he had spoken to the President of the North American Frenzelit subsidiary and that all involved persons needed to leave the site.

87.     Defendant Brown then told Plaintiff Beaver to also gather his things and leave the work site.  When Beaver respectfully questioned him as to why he should leave, Brown told him, "just leave."

88.     Plaintiffs took their tools to their truck but, after discussing the matter further, decided that they should not leave without completing a complaint.  They returned to speak to "Bill" (Defendant Wentworth).  Plaintiffs again told Defendant Wentworth that they wanted to fill out an incident form and make a written statement about what had occurred.

89.     Defendant Wentworth advised Plaintiffs that Defendant Dykes had already left the site and it would "not be necessary" to complete a statement.

90.     Plaintiff Beaver reiterated that there had been an incident and that Plaintiffs wanted to complete a written statement.  Defendant Wentworth then asked to speak with Plaintiff Carter privately.

91.     Carter joined him in his office and Defendant Wentworth closed the door. Defendant Wentworth took his glasses off and said, "Look, I can tell that you are angry, 20 years ago I was like you, but when things like this happen in life, you have to look the other way, and don't look back. Alright?"  He then opened the door and led Carter out.  Addressing Plaintiff Beaver, he said, "You guys go get some rest now, you will be alright."  As Plaintiffs were leaving, Defendant Wentworth mentioned an Arc Energy employee, Greg Cox (Caucasian) who he said he'd worked with years before, and who was a "good guy."

## Dominion's Labor Suppliers Confirm Dominion's Banning of Plaintiffs

92.      Plaintiffs left the job site and Plaintiff Carter called the Frenzelit, Inc. offices.  He spoke with Defendant Tom O'Brien, the Frenzelit Field Service Manager in Winston Salem, North Carolina.  Plaintiff Carter told him about the incident with Chris Dykes.  He laughed and said, "Yeah, I know, you and Tyrone are gone."

93.      Carter then phoned the Arc Energy office and explained what had happened to Amanda Baker, an Arc Energy staffing person.  She said that she would speak with the owner, Roddy Phillips (Defendant Roger D. Phillips, II) and would get Plaintiffs on another job quickly.

94.      Later that morning, driving back to his Connecticut home, Carter called Greg Cox at Arc Energy, the gentleman Wentworth had mentioned, and again explained what had happened.  Mr. Cox said he knew Mr. Wentworth and would make some calls to find out what happened and get back to Carter.

95.      Plaintiffs each reported what had occurred to Defendant Phillips at Arc Energy. He asked for the last name of the Dominion employee "Bill" to whom Plaintiffs had reported the incidents. Carter confirmed with a Dominion/VEPCO co-worker that Bill Wentworth was the on-site Dominion supervisor to whom they had verbally reported the incident and he relayed that information to Mr. Cox.  Later that afternoon, Greg Cox at Arc Energy called Carter back to tell him that he had confirmed that Plaintiffs had been barred from working at any Dominion Energy (and VEPCO) worksite.

## Plaintiffs are Terminated from Arc Energy Services, Inc.

96.      When Plaintiffs next spoke with Defendant Phillips, he confirmed that Plaintiffs were banned from all Dominion sites.  Plaintiffs were told by Phillips that, because Arc Energy only supplied labor to Dominion work sites, Plaintiffs' employment at Arc Energy would be

terminated.  Plaintiffs received their final paychecks and Arc Energy has not assigned them to any further jobs.  They were not paid all monies due by Arc Energy that they would have received on completion of the Dominion job ("in and out" money) paid in addition to hourly compensation.

### Dominion Chooses to Ignore, and with Co-Defendants, to Conceal Dykes' Conduct

97.    Plaintiffs were later informed that Dykes, the Caucasian who instigated the racial incident, had not been required to leave the Dominion worksite on March 26.  This decision could not have been reached without the full knowledge and approval of Dominion, whose personnel, by this and other actions, ratified Dykes' racial invective and racially motivated conduct.

98.    The following day, Plaintiffs learned that Dominion and its labor suppliers had secured false statements from several workers who witnessed the attacks, in an apparent effort to cover up the truth.

99.    Timothy McCathern, a Caucasian worker who had witnessed the series of racially motivated conduct was approached by Defendant O'Brien and asked to sign a statement placing all of the blame for the altercation on Plaintiffs.  McCathern refused to provide such a statement because the proffered statement was false – the Plaintiffs, he told O'Brien, had done nothing wrong.  O'Brien persisted, saying, "the more statements the better" and "you're either with Frenzelit or against us."  McCathern again refused to lie.  His employment was terminated the following day.

100.    Prior to March 26, McCathern had provided his superiors examples of Dykes' racially motivated conduct, including Dykes labeling McCathern a 'n***er lover.'  Despite this, O'Brien had taken no action to discipline Dykes.

**Defendants Publish Knowingly False and Defamatory Accounts of Plaintiffs' Actions**

101.     On information and belief, Defendants Dykes, Brown, Wentworth, O'Brien and Phillips each knew that Plaintiffs had not engaged in workplace misconduct, yet each republished the Plaintiffs' "banning," republishing the false innuendo that Plaintiffs had engaged in workplace misconduct justifying their "ban" from Dominion.

102.     Dominion Energy, Inc./VEPCO, Frenzelit, Inc. and Arc Energy Services, Inc. each participated in, ratified and/or adopted, the defamatory statements made by Defendants Dykes, Brown, Wentworth, O'Brien and Phillips, further republishing same.

**Systemic Racial Exclusion at the Bear Garden and Other Dominion Power Sites in Virginia, North Carolina and South Carolina**

103.     The racial imbalance observed by Plaintiffs at Dominion's Bear Garden site cannot be achieved by neglect or inadvertence.

104.     In fact, the paucity of African American representation in the Bear Garden power plant workforce was representative of its power plant workforce throughout North Carolina and Virginia.

105.     Prior to Plaintiff Beaver's termination and banning from Dominion sites, he had worked exclusively on Dominion power plant sites in Virginia and North Carolina as labor supplied by Arc Energy Services, Inc.  During this time, from May 1, 2014 through his March 26, 2019 termination, he never encountered more than a handful of African American employees working on any Dominion power plant sites.  The augmented workforce demographics were similar in the lack of any significant African American representation.

106.     Dominion/VEPCO has engaged in a pattern and practice of discriminating against African American workers in its power plant operations, including Plaintiffs, in employment

and/or the right to make or enjoy contracts on the same basis as white citizens. This has been through failure to contract with, and the failure to retain (or running off) qualified African American workers. Plaintiffs are examples of this racial discrimination.

107.   On information and belief, the lack of African American workers, including specialized trades, at the Bear Garden, and other, Dominion/VEPCO power plants result from decisions made in the Dominion contracting officials in the staffing offices of Dominion's Richmond, Virginia headquarters.

**Dominion's Actions Speak Louder than its Words (Policy)**

108.   Dominion has failed to accept complaints of discrimination, thereby disabling any effective complaint process and rendering it useless.

109.   Rather than a "Zero Tolerance" to racial discrimination (Dominion's stated policy), in practice Dominion on-site management has instituted a practice of "Zero Tolerance" to providing equal contracting opportunities to African American workers, including but not limited to Dominion's "augmented" contractual workforce.

110.   On further information and belief, Dominion has failed to: (1) provide African-American contract laborers the same contractual opportunities as Caucasian employees; (2) failed to require the contractors who supply Dominion its "augmented" labor force to honor the federal laws prohibiting race based discrimination in the opportunity to contract; and/or (3) have given only lip service to its stated "Zero Tolerance" to discrimination.

111.   Moreover, when confronted with serious and objectively determined offensive racially based conduct, Dominion engaged in a cover-up to conceal its actions, interfering with Plaintiffs' contracts and acquiescing in (or directing) the termination of the only Caucasian witness who would stand up to Defendants to challenge their unlawful actions.

**Emotional, Economic and Societal Harm Caused by Defendants' Actions**

112.     Plaintiffs could not believe what had occurred. And that it had occurred openly, with the knowing support and ratification of Dominion and its onsite management following discrimination by its supplied labor employees.

113.     The racial insults which Plaintiffs were subjected to were extremely offensive to Plaintiffs, as they should be to any law-abiding person.

114.     Defendants Dominion Energy, Inc./VEPCO's actions were intentional, malicious, with a conscious disregard of the law and were calculated to harm Plaintiffs on the basis of their race and/or for their opposition to invidious racial discrimination, entitling Plaintiffs to punitive damages.

115.     Legitimate and well-intentioned public discourse is harmed by such offensive actions and verbiage, as indicated by the many state and federal prohibitions outlawing racially based and hate filled invective and threats, some of which are asserted herein.  Punitive damages and injunctive and declaratory relief are particularly appropriate on these facts to clearly declare the harm that such conduct does to society, generally, in addition to the harm suffered by Plaintiffs, individually.

116.     Plaintiffs have been damaged as a proximate result of Defendants' actions, and have suffered financial and emotional injury at the hands of Defendants.

117.     Although Plaintiff Beaver had regularly worked at Dominion power plant locations for 5 years, this ceased on March 26, 2019 when "banned" from all Dominion premises.  The breadth of Dominion's 18 state presence removed a large block of power plants from possible employment – and on power plants where Plaintiffs had worked for several years.

118.    Plaintiff Carter was unable to get welding work for 5 months, after which he secured specialty welding work in Connecticut.   Plaintiff Beaver was able to secure welding work, but only by traveling to West Virginia and areas outside of Dominion's extensive service network.

119.    On information and belief, Plaintiffs have been adversely affected by the negative statements put out by Defendants regarding them.   Plaintiff Beaver was recently denied one opportunity in North Carolina when the hiring official asked him if he had worked with Arc Energy Services, Inc.

### RULE 23 CLASS ACTION ALLEGATIONS

**A.**    <u>**Class Definition**</u>

120.    Plaintiffs, the Rule 23 Class Representatives, bring their claims under Section 1981 and Title VII to the 1964 Civil Rights Act, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated , as more specifically described below.

121.    The plaintiffs seek to represent a class, of which they are members, consisting of:

(a) Former African American employees of Dominion/VEPCO power plant operations, including all "contract" workers supplied by labor suppliers during the limitations period (including but not limited to labor supplied by Frenzelit, Inc., and Arc Energy Services, Inc.);

(b) African American applicants and those who had expressed interest in employment with Dominion/VEPCO or its labor suppliers of "contract" workers and, despite qualification, were denied hire or placement into positions Dominion/VEPCO

power plant operations during the limitations period (including but not limited to labor supplied by Frenzelit, Inc., and Arc Energy Services, Inc.); and

(c) Current African American employees of Dominion/VEPCO power plant operations, including supplied labor "contractors" removed or separated from positions in Dominion/VEPCO power plant operations (including but not limited to labor supplied by Frenzelit, Inc., and Arc Energy Services, Inc.).

122.    Plaintiffs also seek to present two subclasses, of which they are members, consisting of qualified African Americans who were:

Sub-class A:

(a) denied hiring in (skilled and unskilled) labor positions at Dominion/VEPCO gas, oil, nuclear power plant operations during the limitations period; and

(b) terminated, released or separated from such positions during the limitations period.

Sub-class B:

(a) denied hiring in welding positions at Dominion/VEPCO gas, oil, nuclear power plant operations during the limitations period; or

(b) terminated or released from such positions during the limitations period.

123.    Current and former Dominion/VEPCO, Frenzelit and/or Arc Energy employees who hold or have held management positions are excluded from the class(es) for such periods of the liability period in which they were employed in managerial positions.

124.    The named plaintiffs as class representatives and sub-class representatives, and the class and subclass defined above, meet each of the requirements of Rule 23(a), 23(b)(2), and

23(b)(3) of the Federal Rules of Civil Procedure for certification of this case as a class actions, for the reasons stated below.

**B.**     **Efficiency of Class Prosecution of Common Claims**

125.     Certification of a class of current and former employees and applicants is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class. Conversely, proceeding on an individual basis will require the filing of potentially hundreds of duplicative individual suits which will waste judicial time and resource and create the risk of inconsistent or varying adjudications of common issues.

**C.**     **Numerosity and Impracticality of Joinder**

126.     The exact number of the members of the class and subclasses is not known at present, and will be determined through discovery.  Based on publicly available information referenced above, it is estimated that Dominion's power plant operations constitute some 6,000 of Dominion's 21,000 employees, of which at least several hundred positions should been available to qualified African American candidates.

127.     The class which the Class Representatives seek to represent are so numerous that joinder is impracticable. On information and belief, during the applicable limitations period, employees and contractors meeting the joint employment control tests in the 4th Circuit at Dominion's power plants should have been African Americans denied opportunities they should have had under Department of Energy and OFCCP federal contractor standards and who have been unlawfully denied employment or retention to work at these facilities during the liability period.

**D.**    **Common Questions of Law and Fact**

128.    The application of Defendants' hiring and retention practices presents common issues of fact in this matter.  Moreover, it is alleged that Dominion has retained the right to, and has, utilized centralized control over the hire of "contract" employees it may have excluded from its affirmative action calculations but were performing work at its Power Stations.  These would include individuals such as Plaintiffs, listed as "sub-contractors" and provided by Defendants Frenzelit and Arc.

129.    It is alleged that Dominion made crucial decisions to selectively exclude Plaintiffs from the Bear Garden worksite on the basis of their race.  On information and belief, all present and former Dominion and Dominion labor suppliers were subject to the same centralized and discriminatory employment hiring and retention practices during the applicable liability periods.

130.    Common issues of fact exist in this matter as to whether Dominion's hiring and retention practices (including those of "contractor" supplied labor) discriminated on the basis of race during the applicable limitations periods.

131.    These common questions include:

a.    Whether African Americans were denied hiring to power plant positions because of their race;

b.    Whether African Americans who have held positions in Dominion power plants have been discriminated against in retention in such positions;

c.    Whether Dominion has given decision-making authority in the above described personnel actions to managers who exercise uncontrolled, unsupervised discretion that provides a ready means for discrimination, and whether that authority is used to discriminate in decision-making;

d.   Whether there is a pattern or class-wide practice in Dominion's above-described decision-making in personnel matters of intentional race discrimination against African Americans;

e.   Whether Dominion/VEPCO used its "augmented" workforce of supplied labor in such a way as to avoid its federal contractor affirmative action obligations with respect to the hire and retention of African Americans;

f.   Whether Dominion monitored the actions of its labor suppliers to determine their meeting federal contractor affirmative action obligations with respect to the hire and retention of African Americans;

g.   Whether statistical analyses of the hire and retention practices show adverse impacts;

h.   Whether the above-described policies and practices of Dominion/VEPCO's power plants result in an adverse impact to African Americans and, if so, whether they are job-related and consistent with business necessity.

i.   What relief is appropriate to remedy the claims of plaintiffs and the class resulting from Dominion/VEPCO's above-described discriminatory employment practices pursuant to Title VII and Section 1981;

j.   The appropriate standards for grant of injunctive relief, both equitable and in the form of damages, to remedy Dominion/VEPCO's above-described discriminatory practices;

k.   Whether, as a result of Dominion/VEPCO's above-described discriminatory practices, plaintiffs and the class suffered lost wages and monetary damages;

l.      Whether Dominion/VEPCO's above-described discriminatory actions are "intentional" without the meaning of the authorities applying Section 1981 and 42 U.S.C. §1981(a)(1); and

m.      Whether Dominion/VEPCO acted with malice or reckless indifference by the above-described discrimination against Plaintiffs and the class and sub-class in the face of a perceived risk that its actins would violate their rights such that an award of punitive damages to the class is appropriate; and, if so, now such award should be determined and distributed to members of the class and subclass.

**E.      Typicality of Claims and Relief Sought**

132.    The claims of the Class Representatives, who are representatives of the class and sub-class, are typical to those of the class and sub-class members as a whole in that their claims are based on the same alleged discriminatory hiring and retention practices. The named plaintiffs have been personally affected and discriminated against by the same policies and practices that plaintiffs allege in this complaint have harmed the class and subclass as a whole and other class and subclass members individually. The relief sought by the Class Representatives for reinstatement/hire and equitable backpay and benefits is also typical of the relief which is sought on behalf of the proposed class.

**F.      Adequacy of Representation**

133.    Plaintiffs will fairly and adequately represent the interests of the class and subclass. They experienced the alleged discrimination first-hand and are excellent class representatives. Their interests are co-extensive with those of the members of the proposed class and sub-class they seek to represent. They have knowledge of Defendants' hiring and retention practices. There is no conflict between any named plaintiff and other members of the class or

subclass with respect to this action or the claims from relief set forth in this complaint. The plaintiffs are committed to being representatives of the class, and they have retained counsel experienced and competent in prosecuting class action employment cases to protect the interests of the class who have, and will devote, adequate staff and other resources to the case.

### G.   Rule 23(B)(2), (3) Requirements

134.   This case is maintainable under Rule 23(b)(2) in that defendant Dominion/VEPCO has acted or refused to act on grounds which are generally applicable to the class and subclass, in particular, race, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the class as a whole.

135.   This action is also properly maintained as a class action pursuant to subsection (b)(3) of Rule 23, particular with respect to the claims of class an subclass members for damages. With respect to those claims, questions of law and fact common to the members of the class and subclass predominate over questions affecting only individual class and subclass members; and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

136.   Individual class and subclass members have minimal interest in individually maintaining or controlling separate actions in this case. The putative class members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized hiring and retention practices and their recovery in either an individual or class action will be based on the amount of compensation and related benefits that they have been denied by Defendants.

137.   Interests of fairness, efficiency, and consistency of outcome will be served by concentrating the litigation of the class and subclass members' claims in this particular forum

and action; this case will be manageable as a class action, and far more easily manageable than the multiplicity of individual actions in different jurisdictions that would result if this case is not permitted to proceed as a class action. Individual cases would clog the court and waste judicial time and resources.

138.    The Class Representatives and counsel are not aware of any other pending litigation concerning the controversy that involves other proposed class members.

139.    It is desirable to concentrate the claims in this forum because Dominion/VEPCO is based in this federal district and the decisions regarding the employment practices complained of herein occurred in this district.   Moreover, one of the core issues in the case, regarding Dominion's use of an "augmented" employee workforce, have been litigated in this Court.   It would be duplicative and wasteful of judicial resources to relitigate those issues.

140.    The Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this forum.

## COUNT I
### 42 U.S.C. § 1981 (as amended)
### Class Claim for Unlawful Racial Discrimination in Selection, Hire and Retention
### (Rule 23 Class Claim on Behalf of African American Plaintiffs and Members of the Class Against Dominion Energy, Inc. and its wholly owned subsidiary VEPCO)

141.    Plaintiffs incorporate by reference and reallege the preceding paragraphs as though set forth fully herein.

142.    Defendant Dominion/VEPCO's discrimination against Plaintiffs, and the members of the class and subclass, is in violation of the rights of plaintiffs and the class afforded them by the Civil Rights Act of 1866, 42 U.S.C. § 1981.

143.    By the conduct described above, defendants Dominion/VEPCO intentionally deprived the above-named African American members of the class of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual relationship with Dominion/VEPCO, in violation of 42 U.S.C. §1981.

144.    As a result of Dominion/VEPCO's discrimination in violation of Section 1981, the African American plaintiffs and members of the class have been denied employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Dominion/VEPCO's actions, thereby entitling them to compensatory damages.

145.    Defendants Dominion Energy's and VEPCO's indifference to overt racial discrimination and dissimilar treatment of African American employees (class representatives Beaver and Carter as compared to Defendant Dykes) demonstrates racial bias in retention.

146.    The racial disparities in the hire, and retention, of African American employees is evident in the Dominion Bear Garden Power Station, and that of the supplied labor by Frenzelit and Arc Energy, which also have racially imbalanced workforce demographics.

147.    On information and belief, Dominion/VEPCO's Power Generation plant worksites (including but not limited to labor supplied to such facilities by labor suppliers such as Frenzelit and Arc Energy), demonstrate similar racial disparities.

148.    Defendants Dominion and VEPCO (including the supplied labor of Frenzelit and Arc Energy) have, separately and as a joint employer, discriminated in the hire of qualified African American applicants and retention of qualified African Americans.

149.    In the alternative, on information and belief, Defendants' selection, hire and retention practices have adversely affected African American candidates and employees, resulting in statistically significant disproportionately small percentages of African American employees at Dominion's power stations (including labor provided by labor suppliers such as Frenzelit and Arc), in violation of 42 U.S.C. § 1981.

150.    On information and belief, Dominion/VEPCO has attempted to avoid its affirmative action obligations for the hire and retention of African Americans through the use of supplied labor it designates as "contractors" but retains the right to control under contractual requirements with each of its labor suppliers.

151.    In the discriminatory actions as alleged above, Dominion/VEPCO has acted with malice or reckless indifference to the rights of the above-named African American plaintiffs and class members, thereby entitling them to an award of punitive damages.

## COUNT II
### 42 U.S.C. § 2000e, *et seq.* (Title VII) (as amended)
### Class Claim for Unlawful Racial Discrimination in Selection, Hire and Retention
### (Rule 23 Class Claim on Behalf of African American Plaintiffs and Members of the Class Against Dominion Energy, Inc. and its wholly owned subsidiary VEPCO)

152.    Plaintiffs incorporate by reference and reallege the preceding paragraphs as though set forth fully herein.

153.    Defendants Dominion and VEPCO have engaged in a pattern and practice of intentional racial discrimination in the selection, hire and retention of African Americans.

154.    Defendants Dominion and VEPCO have, separately and as a joint employer, discriminated in the hire of qualified African American applicants and retention of qualified African American employees.

155.     Defendant's discrimination against all of the plaintiffs and members of the class is in violation of the rights secured to plaintiffs and the class by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991.

156.     As alleged herein, Dominion/VEPCO have failed and refused to honor their obligations as federal contractors to take affirmative action to ensure that African Americans (including but not limited to labor supplied by labor suppliers such as Frenzelit, Inc. and Arc Energy Services, Inc.) are employed and retained.  (This includes, without limitation, the right not to be terminated or "banned" from future employment on the basis of race or color.)

157.     On information and belief, Dominion/VEPCO has attempted to avoid its affirmative action obligations for the hire and retention of African Americans through the use of supplied labor it designates as "contractors" while retaining the right to control such employees under contractual requirements with each of its labor suppliers.

158.     By the conduct described above, defendants Dominion/VEPCO intentionally violated the rights of plaintiffs and members of the class under Title VII.

159.     Defendants Dominion/VEPCO's conduct also has had an adverse impact against plaintiffs and members of the class, and is neither job-related nor consistent with business necessity, and therefore violates the rights of plaintiffs and members of the class under Title VII.

160.     As a result of the violation of the Title VII rights of plaintiffs and the class, those plaintiffs and members of the class are entitled to equitable and injunctive relief, including "rightful place" and "make whole" remedies and equitable monetary relief, to remedy and compensate for the effects of defendants Dominion/VEPCO's unlawful actions.

161.     As a result of the defendants Dominion/VEPCO's intentional violation of the Title VII rights of the plaintiffs and the class, those plaintiffs and members of the class have

suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling them to compensatory damages.

162.    In the discriminatory actions as alleged above, Dominion/VEPCO has acted with malice or reckless indifference to the rights of the above-named African American plaintiffs and class members, thereby entitling them to an award of punitive damages.

163.    To remedy the violation of the rights of plaintiffs and the class secured by Title VII, plaintiffs request that the Court award them the relief prayed for below.

**COUNT III**
**42 U.S.C. § 1981 (as amended)**
**Unlawful Discrimination in the Right to Contract**
**(Against Dominion Energy, Inc./VEPCO, Frenzelit, Inc. and Arc Energy Services, Inc.)**

164.    Plaintiffs incorporate by reference and reallege the preceding paragraphs as though set forth fully herein.

165.    Dominion Energy, Frenzelit and Arc, by and through the actions of its agents and representatives which it ratified and condoned, intentionally discriminated against Plaintiffs in their rights to freely make and perform contracts on the same basis as white persons, including all terms, conditions, benefits and privileges of such contracts, all as guaranteed to Plaintiffs pursuant to 42 U.S.C. § 1981, *et seq.*, as amended by the Civil Rights Act of 1991.

166.    Dominion, Frenzelit and Arc treated Plaintiffs differently from Caucasian and other, non-African American workers because of their race (African American) in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

167.    Dominion, Frenzelit and Arc permitted Plaintiffs to be subjected to repeated attacks based on their race, and ongoing racially-based harassment permeating the work environment, refusing to discipline Defendant Dykes, who was permitted to receive the benefits

of his contractual association with Dominion. Dominion was aware of, and ratified, Dykes' actions in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

168.    Dominion's, Frenzelit's and Arc's actions and conscious failures to act subjected Plaintiffs to a racially hostile environment at their work site, which included physical threats, and was not addressed, despite such Defendants' knowledge and the fact that any reasonable person would be offended at such conduct.

169.    Dominion, Frenzelit and Arc selectively barred Plaintiffs from Dominion worksites, interfering with their existing contractual relationships in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

170.    Dominion Energy, Inc. unlawfully communicated to Frenzelit, Inc. and to Arc Energy Services, Inc. that Dominion had banned Plaintiffs from working on Dominion worksites, further damaging Plaintiffs' right to freely to contract, in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

171.    Defendants Frenzelit and Arc effectuated the ban on Dominion's behalf, terminating Plaintiffs' employment and opportunities to contract.

172.    Dominion Energy, Inc. unlawfully participated in, and/or ratified, the fabrication of written statements created for the purpose of concealing the racially based actions stated hereinabove, in further violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

173.    As a consequence of Dominion's intentional discrimination, Plaintiffs have suffered, continue to suffer, and will in the future suffer emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

174.   As a consequence of Dominion's intentional discrimination, Plaintiffs have lost wages and other financial incidents and benefits of their contracts with Dominion and their labor suppliers, and will continue to suffer such losses.

175.   As a consequence of the acts and omissions of Dominion, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

176.   Frenzelit unlawfully participated in, and/or ratified, the fabrication of written statements created for the purpose of concealing the racially based actions stated hereinabove, in further violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

177.   As a consequence of Frenzelit's intentional discrimination, Plaintiffs have suffered, continue to suffer, and will in the future suffer emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

178.   As a consequence of Frenzelit's intentional discrimination, Plaintiffs have lost wages and other financial incidents and benefits of their contracts with Dominion and their labor suppliers, and will continue to suffer such losses.

179.   As a consequence of the acts and omissions of Frenzelit, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

180.   Arc unlawfully participated in, and/or ratified, the fabrication of written statements created for the purpose of concealing the racially based actions stated hereinabove, in further violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

181.   As a consequence of Arc's intentional discrimination, Plaintiffs have suffered, continue to suffer, and will in the future suffer emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

182.    As a consequence of Arc's intentional discrimination, Plaintiffs have lost wages and other financial incidents and benefits of their contracts with Dominion and their labor suppliers, and will continue to suffer such losses.

183.    As a consequence of the acts and omissions of Arc, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

184.    Each of these defendants has interfered with contractual and employment opportunities that Plaintiffs had with each of the other defendant employers.

185.    In the discriminatory actions as alleged above, Defendants Dominion/VEPCO, Frenzelit and Arc have acted with malice or reckless indifference to the Plaintiffs' rights, thereby entitling them to an award of punitive damages.

186.    To remedy the violation of the Plaintiffs' rights secured by 42 U.S.C. § 1981, plaintiffs request that the Court award them the relief prayed for below.

**COUNT IV**
**42 U.S.C. § 1981 (as amended)**
**Retaliation**
**(Against Dominion Energy, Inc./VEPCO, Frenzelit, Inc. and Arc Energy Services, Inc.)**

187.    Plaintiffs incorporate by reference and realleges the preceding paragraphs as though set forth fully herein.

188.    Plaintiffs opposed and challenged the selective, racially based treatment because of their race (African American) in their conversations with Bill Wentworth when they attempted to file written complaints, protected conduct under 42 U.S.C. §1981(b).

189.    Dominion, through its agents William (Bill) Wentworth acted to deny Plaintiffs the opportunity to file written complaints of the racially based treatment and retaliated by

banning Plaintiffs from all Dominion work sites, in violation of the anti-retaliation protections of 42 U.S.C. § 1981, as amended.

190.    Each of defendants Dominion/VEPCO, Frenzelit and Arc has interfered with contractual and employment opportunities that Plaintiffs had with each of the other defendant employers/labor suppliers.

191.    As a consequence of each of Defendants' Dominion/VEPCO's, Frenzelit's and Arc's retaliation, Plaintiffs have suffered emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

192.    As a consequence of each of Defendants' Dominion/VEPCO's, Frenzelit's and Arc's retaliation, Plaintiffs have suffered economic losses, including loss of compensation and other financial incidents and benefits of their contracts.

193.    As a consequence of each of Defendants Dominion/VEPCO's, Frenzelit's and Arc's retaliation, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

194.    In the discriminatory actions as alleged above, Dominion/VEPCO, Frenzelit and Arc have acted with malice or reckless indifference to the Plaintiffs' rights, thereby entitling them to an award of punitive damages.

195.    To remedy the violation of the rights of plaintiffs secured by 42 U.S.C. §1981, plaintiffs request that the Court award them the relief prayed for below.

**COUNT V**
**Title VII to the 1964 Civil Rights Act, as amended**
**Racial Discrimination**
**(Against Dominion Energy, Inc./VEPCO, Frenzelit, Inc. and Arc Energy Services, Inc.)**

196.    Plaintiffs incorporate by reference and realleges the preceding paragraphs as though set forth fully herein.

197.    By their actions, Defendants Dominion/VEPCO, Frenzelit and Arc discriminated against Plaintiffs in the terms, conditions and privileges of their employment on the basis of their race and/or color.

198.    As a consequence of Dominion/VEPCO's, Frenzelit's and Arc's intentional discrimination, Plaintiffs have suffered, continue to suffer, and will in the future suffer emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

199.    As a consequence of Dominion/VEPCO's, Frenzelit's and Arc's intentional discrimination, Plaintiffs have lost wages and other financial incidents and benefits of their contracts with Dominion and their labor suppliers, and will continue to suffer such losses.

200.    As a consequence of the acts and omissions of Dominion/VEPCO's, Frenzelit's and Arc's intentional discrimination, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

201.    In the discriminatory actions as alleged above, Dominion/VEPCO, Frenzelit and Arc have acted with malice or reckless indifference to the Plaintiffs' rights, thereby entitling them to an award of punitive damages.

202.    To remedy the violation of the Plaintiffs' rights of secured by Title VII, Plaintiffs request that the Court award them the relief prayed for below.

## COUNT VI
### Title VII to the 1964 Civil Rights Act, as amended
### Retaliation
**(Against Dominion Energy, Inc./VEPCO, Frenzelit, Inc. and Arc Energy Services, Inc.)**

203.    Plaintiffs opposed and challenged the selective, racially based treatment because of their race (African American) in their conversations with Defendants Brown and with Wentworth when they attempted to file written complaints, protected conduct under 42 U.S.C. §200e-5 (Title VII).

204.    Dominion/VEPCO, through its agents Brown and Wentworth, acted to deny Plaintiffs the opportunity to file written complaints of the racially based treatment and retaliated by terminating and banning Plaintiffs from all Dominion work sites, in violation of the anti-retaliation protections of 42 U.S.C. §200e-5 (Title VII), as amended.

205.    As a consequence of each of Defendants Dominion/VEPCO's, Frenzelit's and Arc's retaliation, Plaintiffs have suffered emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

206.    As a consequence of each of Defendants Dominion/VEPCO's, Frenzelit's and Arc's retaliation, Plaintiffs have suffered economic losses, including loss of compensation and other financial incidents and benefits of their joint employment by these employers.

207.    As a consequence of each of Defendants Dominion/VEPCO's, Frenzelit's and Arc's retaliation, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

208.    Each of these defendants has interfered with contractual and employment opportunities that Plaintiffs had with each of the other defendant employers.

209.   In the discriminatory actions as alleged above, Dominion/VEPCO, Frenzelit and Arc have acted with malice or reckless indifference to the Plaintiffs' rights, thereby entitling them to an award of punitive damages.

210.   To remedy the violation of the Plaintiffs' rights of secured by Title VII, Plaintiffs request that the Court award them the relief prayed for below.

## COUNT VII
### 42 U.S.C. § 1981 (as amended)
### Unlawful Discrimination in the Interference with the Right to Contract
### (Against Defendants Dykes, Brown, Wentworth, O'Brien and Phillips)

211.   Plaintiffs incorporate by reference and reallege the preceding paragraphs as though set forth fully herein.

212.   Defendants Dykes, Brown, Wentworth, O'Brien and Phillips unlawfully interfered with Plaintiff's right to contract with Dominion Energy/VEPCO, Frenzelit and Arc, and in so doing, intentionally discriminated against Plaintiffs in their rights to freely make and perform contracts on the same basis as white persons, including all terms, conditions, benefits and privileges of such contracts, all as guaranteed to Plaintiffs pursuant to 42 U.S.C. § 1981, *et seq.*, as amended by the Civil Rights Act of 1991.

213.   As a consequence of each of Defendants' Dykes', Brown's, Wentworth's, O'Brien's and Phillips' actions, Plaintiffs have suffered emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

214.   As a consequence of each of Defendants' Dykes', Brown's, Wentworth's, O'Brien's and Phillips' actions, Plaintiffs have suffered economic losses, including loss of compensation and other financial incidents and benefits of their contracts.

215. As a consequence of each of Defendants' Dykes', Brown's, Wentworth's, O'Brien's and Phillips' actions, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

216. In the discriminatory actions as alleged above, Defendants Dykes, Brown, Wentworth and Phillips have acted with malice or reckless indifference to the Plaintiffs' rights, thereby entitling them to an award of punitive damages.

217. To remedy the violation of the Plaintiffs' rights of secured by Title VII, Plaintiffs request that the Court award them the relief prayed for below.

**COUNT VIII**
**42 U.S.C. § 1985(3) (as amended)**
**Conspiracy to Violate Civil Rights to Freely Contract**
**(Against All Defendants)**

218. Plaintiffs incorporate by reference and reallege the preceding paragraphs as though set forth fully herein.

219. Defendant Dykes' actions were motivated by racial, class-based and invidious discriminatory animus.

220. Defendants O'Brien's, Brown's, Wentworth's and Phillips' actions in consciously and willfully permitting, and assisting, Dykes' racially motivated actions to continue were motivated by racial, class-based and invidious discriminatory animus.

221. Defendants Dominion/VEPCO's, Frenzelit's and Arc's agreement to ban Plaintiffs from Dominion worksites was motivated by ratification of Dykes, O'Brien's, Brown's, Wentworth's and Phillips' racially motivated actions, and was in furtherance of the conspiracy to deny Plaintiffs the equal protection, privileges and immunities of the laws based on their race. The damages suffered by Plaintiffs could not have been inflicted without the overt and knowing

45

cooperation of Defendants Dykes, Brown, O'Brien, Phillips and Dominion/VEPCO.   Each Defendant committed acts in furtherance of the conspiracy.

222.   42 U.S.C. § 1985(3) provides that any act in furtherance of a conspiracy of two or more persons to, directly or indirectly, deprive any person or class of persons of the equal protection, privileges and immunities of the laws violates Section 1985(3).

223.   Dominion/VEPCO, by and through the actions of its agents and representatives, which it ratified and condoned, conspired with Defendants Dykes, Brown, Wentworth, O'Brien. Phillips and/or other unnamed co-conspirators, to deny Plaintiffs their rights to freely contract, irrespective of race, as guaranteed by 42 U.S.C. §1981(b), as amended.

224.   Frenzelit, by and through the actions of its agents and representatives, which it ratified and condoned, conspired with Defendants Dykes, Brown and O'Brien and/or other unnamed co-conspirators, to deny Plaintiffs their rights to freely contract, irrespective of race, as guaranteed by 42 U.S.C. §1981(b), as amended.

225.   Arc, by and through the actions of its agents and representatives, including Defendant Phillips, which it ratified and condoned, conspired with Defendants Dykes, Brown and O'Brien and/or other unnamed co-conspirators, to deny Plaintiffs their rights to freely contract, irrespective of race, as guaranteed by 42 U.S.C. §1981(b), as amended.

226.   As a consequence of these Defendants' concerted actions, Plaintiffs have suffered emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

227.   As a consequence of these Defendants' actions, Plaintiffs have suffered economic losses, including loss of compensation and other financial incidents and benefits of their contracts.

228.   As a consequence of this conspiracy, and the contributing actions of each co-conspirator, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

229.   In the discriminatory actions as alleged above, all Defendants have acted in a concerted manner and with malice or reckless indifference to the Plaintiffs' rights under 42 U.S.C. §1985(3), thereby entitling them to an award of punitive damages.

230.   To remedy the violation of the Plaintiffs' rights of secured by Section 1985, Plaintiffs request that the Court award them the relief prayed for below.

## COUNT IX
## Defamation/ *Respondeat Superior*
## (Against All Defendants)

231.   Plaintiffs incorporate by reference and reallege the preceding paragraphs as though set forth fully herein.

232.   Defendants engaged in a course of conduct designed to defame Plaintiffs by falsely claiming, or inferring, to Dominion employees and/or those outside Dominion that Plaintiffs had been guilty of "misconduct" resulting in being "banned from the Bear Garden Dominion site and all Dominion worksites for 5 years."

233.   On information and belief Defendants Dykes and Brown verbally published defamatory statements that Plaintiffs were guilty of "misconduct" resulting in being "banned from the Bear Garden Dominion site and all Dominion" worksites for a period of 5, or more, years among themselves and to other Dominion Energy, Inc., Frenzelit, Inc. and Arc Energy Services, Inc. employees, and others, including but not limited to Jeremy Helmstetler, Bennie Brown, Tonie Shine, Timothy McCathern, Tony Aldridge, Jim Hammer, and/or others.

234.   On information and belief Defendants O'Brien, Wentworth and Phillips verbally published defamatory statements that Plaintiffs were guilty of "misconduct" resulting in being "banned from the Bear Garden Dominion site and all Dominion" worksites for a period of 5, or more, years among themselves and to other Dominion Energy, Inc., Frenzelit, Inc. and Arc Energy Services, Inc. employees, and others, including but not limited to Greg Cox, Amanda Baker, Bill Reed and/or others.

235.   The statements conveying the message that Plaintiffs engaged in misconduct, or any action justifying termination, were false and known by Defendants to be false.

236.   On information and belief, Defendants' defamatory statements that Plaintiffs "were banned" from Dominion worksites based on Plaintiffs' misconduct were republished internally within Dominion, within Frenzelit and within Arc, and externally to the industry in which Plaintiffs must attempt to secure continued employment.

237.   Under the circumstances, the statements regarding Plaintiffs' abrupt "banning" suggested to employees of Dominion Energy, Inc., Frenzelit, Inc. and Arc Energy, Inc., as well as the welding community to whom these statements were republished and, by extension and the anticipated republications to the public, that Plaintiffs had engaged in serious misconduct such that they were unfit to perform the duties and responsibilities of their positions.  Given that the power plants that Plaintiffs worked on were regulated, including nuclear plants, this profoundly limited the ability of Plaintiffs to work as they had worked in specialty welding before their terminations and banning.

238.   The statements complained of herein constitute defamation and/or defamation *per se*, as they were false and were intended to convey that Plaintiff lacked the ability to competently and professionally perform the duties of Plaintiff's profession or trade.

239.    In the alternative, the statements in the context made, constitute defamation *per quod*, as they were intended to convey that Plaintiffs had been guilty of workplace misconduct when, in fact, they had been the victims of such conduct.

240.    Defendant Dominion Energy, Inc., acting through its management, ratified and adopted each of the defamatory statements as its own.

241.    Defendant Frenzelit, Inc., acting through its management, ratified and adopted each of the defamatory statements as its own.

242.    Defendant Arc Energy Services, Inc., acting through its management, ratified and adopted each of the defamatory statements as its own.

243.    The statements made by each Defendant, and statements made at their direction, were malicious, having been made with knowledge of their falsity or made so recklessly as to amount to a willful disregard of the truth.

244.    The statements complained of herein, in the context alleged, were malicious, willful, wanton, and evinced malice, ill will, having been made with knowledge of their falsity or made so recklessly as to amount to a conscious and willful disregard of the truth and a disregard for Plaintiffs' rights, entitling Plaintiffs to awards of punitive damages..

245.    As a direct and proximate result of Defendants' conduct, Plaintiffs have each suffered, continue to suffer, and will in the future suffer severe injury and damages, including reputational damage, extreme embarrassment and humiliation, severe mental anguish, pain and suffering, loss of employment related opportunities, delays and impediments to professional advancement and opportunities, loss of earnings and related benefits, loss of past and future earning potential, loss of past and future earning capacity, inconvenience, consequential damages, and other injury.

## COUNT X
### Insulting Words/ *Respondeat Superior*
### Va. Code § 8.01-45
### (Against Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc.)

246.     Plaintiffs incorporate by reference and reallege the preceding paragraphs as though set forth fully herein.

247.     Defendant Dykes' words, from their usual construction and common acceptance, were so offensive as to be insults which tend to violence and breach of the peace.

248.     Indeed, Dykes used personally abusive epithets toward Plaintiffs which were clearly, publicly and overtly made to provoke a violent reaction from Plaintiffs. Dykes' insulting statements to both Plaintiffs, and demands that Carter fight him, tended to violence and breach of the peace.

249.     Defendant Dominion Energy, Inc., acting through its management, ratified and adopted each of the insulting statements as its own.

250.     Defendant Frenzelit, Inc., acting through its management, ratified and adopted each of the insulting statements as its own.

251.     The statements made by each Defendant, and statements made at their direction, were malicious, having been made with knowledge of their falsity or made so recklessly as to amount to a willful disregard of the truth.

252.     As a consequence of Dykes' actions, Plaintiffs have suffered emotional distress, anxiety, stress, embarrassment, humiliation, pain, and suffering.

253.     As a consequence of Dykes' actions, Plaintiffs have suffered economic losses, including loss of compensation and other financial incidents and benefits of their contracts.

254.     As a consequence of Dykes' actions, Plaintiffs have incurred and will continue to incur other consequential and incidental damages.

255.     Defendant Dykes' actions were malicious, intentional, egregious and taken with a willful and intentional disregard of Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages.

256.     To remedy the violation of the Plaintiffs' rights, Plaintiffs request that the Court award them the relief prayed for below.

## COUNT XI
### Common Law Battery/ *Respondeat Superior*
### (Plaintiff Carter Against Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc.)

257.     Plaintiff Carter incorporates by reference and realleges the preceding paragraphs as though set forth fully herein.

258.     On March 19, 2019, Dykes acted intentionally to grab Plaintiff Carter's testicles in an apparent show of supposed racial dominance.

259.     This was an unconsented touch and constitutes battery at common law.

260.     Defendant   Dominion   Energy,   Inc./VEPCO,   acting   through   its   (their) management, ratified and adopted Dykes' actions as its (their) own.

261.     Defendant Frenzelit, Inc., acting through its management, ratified and adopted Dykes' actions as its own.

262.     The statements made by each Defendant, and statements made at their direction, were malicious, having been made with knowledge of their falsity or made so recklessly as to amount to a willful disregard of the truth.

263.     Plaintiff Carter suffered damages as a result of Dykes' actions, and as ratified by Dominion/VEPCO and Frenzelit.

264.    Defendant Dykes' actions were malicious, intentional and taken with a willful and intentional disregard of Plaintiff's rights, entitling Plaintiff Carter to an award of punitive damages.

## COUNT XII
### Common Law Assault/ *Respondeat Superior*
### (Plaintiff Carter Against Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc.)

265.    Plaintiff Carter incorporates by reference and realleges the preceding paragraphs as though set forth fully herein.

266.    On March 26, 2019, in the presence of Plaintiffs' and Defendant Dykes' co-workers, Dykes threatened his intended use a whip on Plaintiff Carter in the parking lot where he encouraged Plaintiff Carter to meet him to fight.

267.    Dykes, through his words and actions, acted intentionally to cause a reasonable apprehension of imminent harm or offensive contact in Plaintiff Carter.

268.    Defendant Dominion Energy, Inc., acting through its management, ratified and adopted each of Dykes' actions as its own.

269.    Defendant Frenzelit, Inc., acting through its management, ratified and adopted each of Dykes' actions as its own.

270.    Plaintiff Carter suffered extreme embarrassment and humiliation, severe mental anguish, pain and suffering, and other injury as a result of Dykes' actions.

271.    Defendant Dykes' actions, as ratified by Dominion/VEPCO and Frenzelit, Inc., were malicious, intentional and taken with a willful and intentional disregard of Plaintiff's rights, entitling Plaintiff Carter to an award of punitive damages.

**Prayer for Class Relief Pursuant to Counts I and II (Plaintiffs' Rule 23 Title VII and Section 1981 Class Claims)**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)     Certify this action asserting the putative class' rights under 42 U.S.C. § 1981 (Count I) and 42 U.S.C. §2000e, *et seq.* (Count II) to proceed as a class action, pursuant to Rule 23 Fed. R. Civ. P, upon Plaintiffs' filing of a motion for class certification, with notice to those employees, applicants and former employees similarly situated to Plaintiffs, namely all African American employees who were employed or applied for employment by Defendants during any portion of the four years preceding the filing of this action (Count I, Section 1981) or 300 days preceding the filing of the charges of discrimination immediately preceding the filing of this action (Count II, Title VII) of the existence of this action, the claims set forth herein and notice of their rights herein;

(b)     Award appropriate equitable relief in the form of back pay and benefits in amounts equivalent to the class' previously deprived wages and benefits;

(c)     For an award of reasonable attorney's fees and costs incurred on Plaintiffs' behalf, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. §2000e-5(k), *et seq.*

(d)     For an award of equitable relief requiring the hire of African American employees and applicants denied employment during the applicable liability periods, for hire and/or reinstatement (as applicable) and other equitable relief for each class member; and

(e)     For such other and further relief to which Plaintiffs may show themselves justly entitled.

**Prayer for Individual Relief**

**WHEREFORE,** Plaintiffs Addison Carter and Tyrone Beaver pray that judgment be entered in their favor and against Defendants Dominion Energy, Inc./VEPCO, Frenzelit, Inc., Arc Energy Services, Inc., Christopher Dykes, Joey Brown, William Wentworth, Tom O'Brien

and Roger D. Phillips, II, jointly and severally; and request in addition that this Court enter Orders, as follows:

Individual Declaratory Relief

(g) Declaring that the acts and practices complained of herein are in violation of Plaintiffs' rights as secured by 42 U.S.C. § 1981, as amended, ("Section 1981"), 42 U.S.C. § 1985(3) ("Section 1985") and 42 U.S.C. § 2000e, *et. seq.* (Title VII to the 1964 Civil Rights Act, as amended);

Individual Equitable Relief

(h) Requiring that Defendants reinstate Plaintiffs to their original positions, or a position of equal duties and responsibilities, with equal pay and benefits, or in the alternative, to award Plaintiffs front pay in lieu of reinstatement;

(i) Issuing a permanent injunction enjoining each of Defendants Dominion, Frenzelit and Arc from continuing or maintaining policies, practices or customs of denying, abridging, withholding or conditioning the making or enforcing of contractual rights on the basis of race, which rights are secured by 42 U.S.C. § 1981, as amended, 42 U.S.C. §1985(3) and 42 U.S.C. §2000e (Title VII);

(j) Awarding each Plaintiff back pay, prejudgment interest, and other appropriate equitable relief for lost contractual benefits, including compensation and other employment benefits, and such other affirmative relief as may be appropriate, and for all other wages and other contractual entitlements lost or denied, against Defendants Dominion Energy, Inc./VEPCO, Frenzelit, Inc., Arc Energy Services, Inc., Dykes, Brown, Wentworth, O'Brien and Phillips, jointly and severally, for violations of 42 U.S.C. § 1981, as amended, for violations of 42 U.S.C. § 1985(3) and/or for violations of 42 U.S.C. §2000e (Title VII);

Individual Damages Relief Pursuant to 42 U.S.C. §§ 1981, 1985 and Title VII

(k) Awarding each Plaintiff compensatory damages under 42 U.S.C. §§1981 and 1985, as amended, against Defendants Dominion Energy, Inc./VEPCO, Frenzelit, Inc. and Arc Energy Services, Inc., jointly and severally, in an amount to be determined by the jury at trial but not less than $500,000 per Defendant, on each of the Section 1981, Section 1985 and Title VII Counts;

(l) Awarding Plaintiff punitive damages under 42 U.S.C. §§ 1981 and 1985, as amended, and 42 U.S.C. § 2000e (Title VII) against Defendants Dominion Energy, Inc., Frenzelit, Inc. and Arc Energy Services, Inc., jointly and severally, in amounts to be determined by the jury at trial, but not less than $500,000 per Count and per Defendant;

(m) Awarding each Plaintiff compensatory damages under 42 U.S.C. §§ 1981 and 1985, as amended, against Defendants Dykes, Brown, Wentworth, O'Brien and Phillips, jointly and severally, in an amount to be determined by the jury at trial but not less than $400,000 per Defendant and per Count for each of the Section 1981 and Section 1985 Counts;

(n) Awarding each Plaintiff punitive damages under 42 U.S.C. § 1981(b) against each of the Defendants Dykes, Brown, Wentworth, O'Brien and Phillips, jointly and severally, in an amount to be determined by the jury at trial but not less than $400,000 per Defendant, per applicable Count;

(o) Awarding each Plaintiff punitive damages under 42 U.S.C. § 1985(3) against each of the Defendants Dykes, Brown, Wentworth, O'Brien and Phillips, jointly and severally, in an amount to be determined by the jury at trial but not less than $500,000, per applicable count;

Common Law Tort and State Statutory Relief for Defamation, Assault, Insulting Words

(p) Awarding each Plaintiff an amount of actual damages for reputational and other actual damages for Count IX (Defamation), including extreme embarrassment and humiliation, severe

mental anguish, pain and suffering, and other injury in an amount to be determined by the jury at trial but not less than $600,000 per Defendant, jointly and severally, per publication;

(q) Awarding each Plaintiff an amount of punitive damages against each Count IX (Defamation) defendant in an amount to be determined by the jury at trial but not less than the amount of $600,000 per Defendant, jointly and severally, per publication;

(r) Awarding each Plaintiff an amount of actual damages against Defendant Dykes for violation of Va. Code § 8.-1-45, Count X, in an amount to be determined by the jury at trial but not less than $400,000 per Plaintiff;

(s) Awarding each Plaintiff an amount of punitive damages against Defendants Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc., jointly and severally, for violation of Va. Code § 8.-1-45, Count X, in an amount to be determined by the jury at trial but not less than $400,000 per defendant and to each Plaintiff;

(t) Awarding Plaintiff Carter an amount of actual damages against Defendants Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc., jointly and severally, for common law battery, Count XI, in an amount to be determined by the jury at trial but not less than $400,000 per defendant;

(u) Awarding Plaintiff Carter an amount of punitive damages against Defendant Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc., jointly and severally, for common law battery, Count XI, in an amount to be determined by the jury at trial but not less than $400,000;

(v) Awarding Plaintiff Carter an amount of actual damages against Defendants Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc., jointly and severally, for common law assault, Count XII, in an amount to be determined by the jury at trial but not less than $400,000 per defendant;

(w) Awarding Plaintiff Carter an amount of punitive damages against Defendants Dykes, Dominion Energy, Inc./VEPCO and Frenzelit, Inc., jointly and severally, for common law assault, Count XII, in an amount to be determined by the jury at trial but not less than $400,000 per defendant;

Tax Offset, Attorneys Fees, Costs and Other Relief

(x) Awarding each Plaintiff a separate amount to offset the adverse tax effects of lump sum payments of damages, back pay and/or front pay;

(y) Awarding Plaintiffs' attorneys' fees and costs incurred in this action, together with expert witness fees and expenses, for Counts I-VIII, against Defendants; and

(z) Ordering such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of this action for all claims so triable.

Respectfully submitted,

ADDISON CARTER
TYRONE BEAVER

By: _____
                        Counsel

Harris D. Butler, III, (VSB No. 26483)
Zev H. Antell (VSB. No. 74634)
Paul M. Falabella (VSB No. 81199)
Butler Royals, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel:    (804) 648-4848
Fax:    (804) 237-0413
Email: harris.butler@butlerroyals.com
          zev.antell@butlerroyals.com
          paul.falabella@butlerroyals.com